# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | |
| JAMES S. ADKINS & ) | Case No. 05-00953-TLM |
| DARLA J. ADKINS, ) | |
| ) | Chapter 7 |
| Debtors. ) | |
| _____ ) | |

## MEMORANDUM OF DECISION RE: APPLICATION FOR APPROVAL OF EMPLOYMENT OF SPECIAL COUNSEL

_____

**BACKGROUND AND FACTS**

Chapter 7 trustee Gary L. Rainsdon ("Trustee") filed an "Application for [Approval of] Employment of Special Counsel and verification of Attorney" on October 17, 2007. *See* Doc. No. 28 ("Application"). The Application seeks Court approval under 11 U.S.C. § 327(e) of Trustee's employment of California attorney Randall L. Blake ("Proposed Special Counsel" or "Mr. Blake") in relation to certain pre-bankruptcy litigation in which one of the joint debtors, Darla Adkins ("Debtor"), was involved.[1] The Application indicated that the litigation was settled, that Debtor's attributable share of the settlement recovery was $33,000.00, and that Proposed Special Counsel's employment would be on an hourly fee basis

---

[1] The litigation was related to a probate case, *Matter of Jessie Mae Downs*, and was captioned *Hurley, et al. v. Howard, et al.*, Superior Court, State of California, County of Yolo, Case No. CV 03-2321 (the "California Case"). Debtor was one of three sibling plaintiffs.

MEMORANDUM OF DECISION - 1

pursuant to a 2003 fee agreement signed by Debtor and her siblings to which Trustee agreed to be bound. Doc. No. 28 at 1-2, and at attach. 1. Trustee acknowledged that the settlement of the California Case, as to Debtor, remained subject to this Court's approval on motion, notice and hearing, and that Proposed Special Counsel's fees and expenses would also be subject to this Court's approval.

The Application came on for a hearing on November 28, 2007.[2] Following discussion, the Court allowed Trustee an opportunity to supplement the record in regard to the issue of *nunc pro tunc* employment approval, and also to supplement in regard to what fees and costs had been incurred in obtaining the settlement that were attributable to Debtor and would be claimed under the fee agreement appended to the Application. *See* Doc. No. 31 (minute entry).

On December 31, 2007, Trustee filed an affidavit executed by Mr. Blake. Doc. No. 32 ("Affidavit"). The Affidavit reflects:

   – that Mr. Blake became aware in mid-June, 2005, from his opposing counsel in the California Case, of the pendency of Debtor's bankruptcy;

   – that he relied on Debtor's advice to him at or around that time that her case was almost concluded and she would receive a discharge;

   – that a settlement of the California Case was reached in October, 2005;

---

[2] Under LBR 2014.1(c), such applications may be considered by the Court without hearing if no objections are raised. Though no objections were raised to the Application in this case, the Court had questions regarding the matter, and therefore issued its own notice of hearing. *See* Doc. Nos. 29, 30.

MEMORANDUM OF DECISION - 2

    – that he relied on Debtor's advice to him at or about the time of that settlement that her discharge had been entered in June, 2005, and that the bankruptcy estate would have no claim on her share of any settlement;

    – that on October, 26, 2005, he heard from a staff member of the then-chapter 7 trustee, Lois Murphy;

    – that in mid-November, 2005, his clients, including Debtor, executed documentation effecting the settlement of the California Case;

    – that in May, 2006, he communicated with the prior trustee regarding turnover to her of the settlement funds and execution of documentation to obtain Bankruptcy Court approval of his employment but, reaching no common understanding, retained the funds and did not agree to execute the proffered employment forms;

    – that following the replacement of the former chapter 7 trustee by Trustee Rainsdon, he has turned over $33,333.33 in settlement proceeds attributable to Debtor's interest in the California Case.

*Id.* at 2-3. In the Affidavit, Proposed Special Counsel amplifies on his reliance on advice from Debtor as to the impact of the bankruptcy:

> I do not practice bankruptcy law and have no familiarity with the procedure, process and/or competing rights between the bankruptcy estate and the debtor. Being informed by my client that the bankruptcy had been "discharged" led me to believe her position that the bankruptcy had no effect on the settlement.

*Id.* at 2.

The Affidavit is silent as to the amount of fees or costs incurred by Counsel in representing Debtor and her siblings in the California Case and in obtaining the 2005 settlement. There is no explanation as to what Debtor's "share" thereof would be under the fee agreement which as attached both to the Affidavit (as

MEMORANDUM OF DECISION - 3

representing Debtor's agreement) and to the Application (reflecting Trustee's proposed arrangement for Proposed Special Counsel's compensation).[3]

There is nothing submitted by Trustee or Proposed Special Counsel addressing the legal standards applicable to *nunc pro tunc* approval of employment of professionals in bankruptcy cases. There is not even any mention of the *nunc pro tunc* issue except a sentence in the Affidavit indicating that, should the Court approve retention *nunc pro tunc*, Proposed Special Counsel "would then be in a position to assist the Trustee in obtaining approval of the compromise." Doc. No. 32 at 3.

The foregoing thus constitutes the record on the Application as presented by Trustee and by Proposed Special Counsel.[4]

---

[3] The attached fee agreement indicates Proposed Special Counsel would be paid fees at a rate of $190.00 per hour (with some exceptions) and actual costs and expenses incurred. It also indicated that a non-refundable $3,000.00 retainer would be required, of which $500.00 had been received. Since the submissions made to this Court indicate substantially all Mr. Blake's work would have been performed up to and including documentation of the settlement in November, 2005, Mr. Blake should be able to specify what the total fees and costs were, and what Debtor's portion would be. That the total of such fees and costs were already deducted from a gross settlement and that Debtor's $33,333.33 is a net share appears unlikely; the settlement agreement appended to the Affidavit indicates the gross settlement was $100,000.00. Doc. No. 32 at attach. 2.

[4] In addition, the Court's review of its own files, *see* Fed. R. Evid. 201, reflects that Debtor disclosed the "Possible will contest distribution" as an asset on her March, 2005 schedule B, indicating its value as "unknown." *See* Doc. No. 1. Debtor also asserted an exemption in that asset on her schedule C, claiming the benefit of Idaho Code § 11-605(10) in an "unknown" amount. *Id.* The former chapter 7 trustee objected to this exemption since § 11-605 applies only to tangible property. Doc. No. 11. The objection was sustained in June, 2005. Doc. No. 14. The file also reflect that Trustee Rainsdon replaced former trustee Murphy in March, 2007. Doc. No. 23.

MEMORANDUM OF DECISION - 4

**DISCUSSION AND DISPOSITION**

Many parties erred in dealing with the issues of representation in the California Case.

Debtors did disclose the pre-petition cause of action as an asset on schedule B. However, neither Debtors nor their bankruptcy attorney evidently did anything to ensure that Mr. Blake was informed of the existence of the bankruptcy or the impact the bankruptcy filing had on his ability to continue representing Debtor or litigating or compromising her claim.[5] Assuming Debtor had no prior or independent experience with or knowledge of these legal issues, one would naturally expect her Idaho bankruptcy attorney to assist her, and assist her state court attorney, in properly handling matters. That apparently did not happen.[6]

In addition, the former chapter 7 trustee was aware of the probate matter through Debtors' schedules B and C filed in March, 2005. That trustee objected to allowance of the claimed exemption in April, 2005, about a week after the § 341(a) meeting.[7] Yet the Affidavit indicates that the *first* contact this trustee made with

---

[5] The Affidavit indicates Proposed Special Counsel was informed of the bankruptcy not by Debtor or her Idaho bankruptcy attorney, but by an adversary's counsel in the California Case.

[6] The Court does not have the benefit of this bankruptcy attorney's recollection or explanation. He did not appear at the November 2007 hearing. The record reflects no withdrawal or substitution of this attorney consistent with this Court's rules, *see* LBR 9010.1(f), but it does contain a "letter" to the Court from Debtor in September, 2006, indicating her counsel "is no longer actively representing me." Doc. No. 22.

[7] Without Debtor, her bankruptcy attorney, or the former trustee appearing at the
(continued...)

MEMORANDUM OF DECISION - 5

Mr. Blake was in October, 2005. This delay is problematic and unexplained as is the evident lack of clarity in that trustee's approach.[8]

However, the errors of Debtors' bankruptcy lawyer or those of the former chapter 7 trustee, actual or arguable, are not at issue.

### A.   *Nunc pro tunc* employment approval

The Application, advanced by the successor Trustee, seeks *nunc pro tunc* approval of Proposed Special Counsel's employment by the estate.[9] Neither Trustee nor Proposed Special Counsel addressed the standards applicable to the issue of allowing employment approval *nunc pro tunc*. This is especially

---

[7](...continued)
November hearing or submitting affidavits, the Court is left to wonder what dialogue occurred regarding the California Case in the spring of 2005. In addition, nobody provided a transcript of the April, 2005 § 341(a) meeting and examination, if it sheds light on the matter.

[8] Trustee could have and should have immediately advised Mr. Blake that the action was property of the estate, that he lacked authority to proceed, and that Court approval of employment was required if he was to further pursue the cause on behalf of the estate or to get paid. Clearly such communications should have occurred well prior to the contact by "the trustee's staff" on October 26, 2005, which was after the litigation had been settled in principle (and far after the disclosure of the claim in March and the § 341(a) meeting and exemption objection in April).

[9] The Application was filed in October, 2007. While rather generic in nature, and not specifically asking for *nunc pro tunc* approval, it alludes to the fact that the California Case was settled. In discussing the matter at hearing, it became evident that a *nunc pro tunc* situation was presented, and Trustee was given an opportunity to supplement the record. The sole submission, the Affidavit, makes clear that Trustee's Application was filed two full years after the services were performed and the settlement of the California Case occurred. There is absolutely nothing presented to indicate that future services will be required of Proposed Special Counsel in connection with the California Case except, perhaps, assisting Trustee's bankruptcy counsel in obtaining approval of the compromise. The Court therefore is forced to conclude that retroactive relief is sought. *See also* Doc. No. 28 at 2 (Trustee's prayer that he "be authorized to *continue* the employment" of Mr. Blake). If the Court is in error, and the Application is intended only to authorize work by and compensation for Mr. Blake from and after October 16, 2007, *see* LBR 2014.1(c) (addressing effective date of employment approval), the Court will allow a renewed Application so proposing to be brought on for consideration.

MEMORANDUM OF DECISION - 6

discomfiting since the Court clearly raised the question in its comments at the November, 2007 hearing and requested additional submissions in support of that sort of relief.

In *Taylor Quality Concrete, Inc.*, 359 B.R. 273, 07.1 I.B.C.R. 3 (Bankr. D. Idaho 2007), this Court held:

> Section 327 and Rule 2014 set forth the framework and procedure for obtaining bankruptcy court approval of the employment by the trustee or debtor-in-possession of professional persons. "In bankruptcy proceedings, professionals who perform services for a debtor in possession cannot recover fees for services rendered to the estate unless those services have been previously authorized by a court order." *Atkins v. Wain, Samuel & Co. (In re Atkins)*, 69 F.3d 970, 973 (9th Cir. 1995) (citing § 327(a), Rule 2014(a), and *McCutchen, Doyle, Brown & Enersen v. Official Comm. of Unsecured Creditors (In re Weibel, Inc.)*, 176 B.R. 209, 211 (9th Cir. BAP 1994)). Therefore, if they intend to be compensated for their efforts, it is imperative for a debtor's attorneys to receive Court approval prior to commencing services for the bankruptcy estate.
>
> There is an exception to the general rule, in that bankruptcy courts in the Ninth Circuit "possess the equitable power to approve retroactively a professional's valuable but unauthorized services." *Atkins*, 69 F.3d at 974. However, such retroactive relief is available only upon a showing of "exceptional circumstances." *Id.* "It is clear that there is no right to a *nunc pro tunc* order." *In re Kroeger Prop. and Dev., Inc.*, 57 B.R. 821, 822 (9th Cir. BAP 1986). The BAP explained that approving employment *nunc pro tunc* is limited to "exceptional circumstances" in order to:
>
>> deter attorneys from general non-observance of Section 327. Otherwise, any attorney who is qualified to serve as a counsel for a debtor in possession could ignore the requirement that a court order be obtained before commencing work. Since professionals are charged with knowledge of the law, there is no unjust hardship in

MEMORANDUM OF DECISION - 7

> requiring them to observe the strict requirements of Section 327.

*In re Kroeger Prop. and Dev., Inc.*, 57 B.R. at 822-23.

> "For the professional seeking an order approving employment *nunc pro tunc*, 'exceptional circumstances' exists when the professional (1) satisfactorily explains his failure to receive prior judicial approval; and (2) demonstrates that his services benefitted the bankrupt estate in a significant manner." *In re Ball*, 04.3 I.B.C.R. 87, 87, 2004 WL 4960388 (Bankr. D. Idaho 2004) (citing *Atkins*, 69 F.3d at 974). Whether to approve an application for employment *nunc pro tunc* is committed to the discretion of the bankruptcy court. *In re Kroeger Prop. and Dev., Inc.*, 57 B.R. at 822.

359 B.R. at 275-76, 07.1 I.B.C.R. at 3-4. *See also In re Melton*, 353 B.R. 901 (Bankr. D. Idaho 2006); *In re Soderquist*, 349 B.R. 23 (Bankr. D. Idaho 2005). *See generally Okamoto v. THC Fin'l Corp. (In re THC Fin'l Corp.)*, 837 F.2d 389, 392 (9th Cir. 1988) (establishing "exceptional circumstances" test).

The Court has considered carefully the submissions made, in particular the Affidavit. At bottom, the failure to clarify the situation and seek approval of employment and authorization from the Court in a timely fashion results from the errors of Proposed Special Counsel, Mr. Blake. Admittedly, he could have been materially aided had Debtor told him in March, 2005, that she had filed; or had Debtor's Idaho bankruptcy attorney contacted him before the bankruptcy filing (when Debtor apparently told him about a "possible will contest distribution") or immediately after the filing; or had the first trustee contacted him after reviewing the record, examining Debtor at the § 341(a) meeting, or objecting to the claimed

MEMORANDUM OF DECISION - 8

exemption in the spring of 2005.

But for all these lost opportunities, Mr. Blake knew there was a bankruptcy in June, 2005, when defendant's counsel in the California Case informed him of the filing. From that date forward, Mr. Blake cannot reasonably ascribe his errors to others.

Mr. Blake is "charged with knowledge of the law." *Taylor Quality Concrete*, 359 B.R. at 276, 07.1 I.B.C.R. at 3 (quoting *Kroeger Prop. and Dev., Inc.*, 57 B.R. at 822-23). He testifies that he was not familiar with bankruptcy law. That does not excuse him from the obligation to become familiar, whether by dint of his own research, or his consultation with local, California bankruptcy lawyers, or talking with his client's bankruptcy lawyer, or addressing the matter with the Debtors' trustee. At best, lack of prior experience or familiarity with bankruptcy law justifies a modest delay while reliable information can be obtained. It does not excuse neglect or failure to inquire.

Here, the Affidavit does not indicate any attempt by Proposed Special Counsel to determine the legal impact or ramifications on his California Case by virtue of Debtor's bankruptcy filing. Instead, it establishes that he relied *solely* on what *Debtor* told him. She informed him that the bankruptcy was "almost finished," that her discharge was somehow of consequence in regard to his ability to pursue the litigation, that "the bankruptcy would have no claim on her share of

MEMORANDUM OF DECISION - 9

the settlement funds." Doc. No. 32 at 2. He was the lawyer; not her. Nothing in this record establishes that his reliance on her input on legal questions involving the bankruptcy was reasonable.[10]

*Taylor Quality Concrete* notes that, in *Melton*, the Court "concluded the application to employ could not be approved *nunc pro tunc* because erroneous interpretations of the law by the debtor's attorney do not rise to the level of exceptional circumstances necessary to justify a *nunc pro tunc* order." 359 B.R. at 277, 07.1 I.B.C.R. at 4 (citing *Melton*, 353 B.R. at 905-06). *Taylor Quality Concrete* reached the same conclusion:

> In this case, Counsel, operating under an uninformed view of the law, failed to cause its client to file an application to employ until seven months after the commencement of the bankruptcy case. This is not a *Soderquist* situation, where debtor's counsel understood the necessity of filing the Application, but mistakenly believed that it had been filed. The Court is sympathetic to Counsel's predicament. However, the premise underlying Counsel's argument is that allowances should be made for practitioners who are unfamiliar with the requirements of bankruptcy law. The Code and Rules cannot operate in such a fashion. Their provisions must apply equally to all professionals, regardless of experience. A lack of familiarity with the requirements of the Bankruptcy Code and Rules does not constitute exceptional circumstances justifying retroactive approval of the Application.

*Id.*[11]

---

[10] Mr. Blake also states "I do not believe that the lack of being approved as special counsel was any fault of mine." Doc. No. 32 at 3. He does not indicate who's fault he believes it was.

[11] The Court also commented: "[I]f the attorneys representing Debtor were 'unaware' of the legal requirement that their employment be approved, that lack of knowledge resulted from
(continued...)

MEMORANDUM OF DECISION - 10

**CONCLUSION**

The Application and submissions provided in support thereof are inadequate to show the extraordinary circumstances required to support retroactive employment approval. The burden of providing an adequate record is on Trustee and Proposed Special Counsel, and it was not met.[12]

The Application will therefore be denied. A separate order will be entered.

DATED: January 31, 2008



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[11](...continued)
their failure to consult the Code or Rules, and the cases construing the applicable provisions. Surely, an attorney's self-imposed lack of awareness of the legal requirements of chapter 11 should not justify avoidance of the consequences of failure to comply with the law." *Taylor Quality Concrete*, 359 B.R. at 276; 07.1 I.B.C.R. at 4.

[12] They were not caught by surprise. The existence of a *nunc pro tunc* issue was patently obvious at the time the Application was filed. The existence and importance of the issue was also identified, and the need for additional submissions was made clear, at the November hearing. Trustee and Proposed Special Counsel were given an opportunity to present further materials, authorities and argument. There is no compelling reason to grant another opportunity.

MEMORANDUM OF DECISION - 11